United States District Court
Southern District of Texas
**ENTERED**
February 14, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| HEATHER IDEUS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:22-CV-00132 |
| | § | |
| DEERE & COMPANY, *et al.* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This is a products liability action that has been removed to federal court.  Pending before the Court is Plaintiff's motion for leave to amend her complaint.  Also pending are separate dismissal motions filed by defendants Deere & Company and Robstown Hardware.  For the reasons discussed below, the undersigned recommends that:

- Defendant Robstown Hardware's motion to dismiss be GRANTED, and that Plaintiff's claims against Robstown Hardware be DISMISSED without prejudice for lack of subject matter jurisdiction;

- Plaintiff's December 1 amended complaint be STRICKEN because it was filed without leave of court;

- Defendant Deere & Company's motion to dismiss the December 1 amended complaint be DENIED as moot;

- Plaintiff's motion for leave to amend her complaint be GRANTED, and that Plaintiff be ORDERED to amend her complaint to allege any claims solely against Defendant Deere & Company, and to allege those claims in compliance with federal pleading standards.

### A. *This case and its history.*

#### 1. *The underlying dispute.*

Briefly stated, this is a products liability action stemming from a rollover accident involving a utility task vehicle known as a "gator."  The gator was manufactured by defendant Deere & Company ("Deere") and was sold by defendant Robstown Hardware ("Robstown") to Bridgette Hott and Joseph Beatty.  Hott and Beatty, who were husband and wife, took Plaintiff and her husband for a ride in the gator, but the gator rolled over during a turn.  Plaintiff suffered an injury to her leg in the rollover.

#### 2. *Proceedings.*

Plaintiff filed this products liability action in Texas state court in July 2021.  (Doc. No. 1, p. 1; Doc. No. 1-3.)  Originally, the defendants in this case were Hott and Beatty, the buyers of the gator.  (Doc. No. 1-3, p. 1.)  Plaintiff amended her state petition in September 2021 to add Deere, Robstown, and King Ranch, Inc. as defendants.  (Doc. No. 1-6.)  Plaintiff amended her state petition again just two weeks later, to add GEICO County Mutual Insurance Company as a defendant.  (Doc. No. 1-8.)  Plaintiff nonsuited Hott and Beatty in December 2021.  (Doc. No. 1-15.)  Later that month, Plaintiff filed a third amended petition, omitting Hott and Beatty.  (Doc. No. 1-16.)  Plaintiff nonsuited King Ranch in January 2022.  (Doc. No. 1-20.)  The following day, January 20, 2022, Plaintiff filed a fourth amended petition, omitting King Ranch.  (Doc. No. 1-21.)  Plaintiff nonsuited GEICO in May 2022.  (Doc. No. 1-26.)[1]  Thus, as of May 2022, Plaintiff's action was against only Deere and Robstown.

---

[1]  Plaintiff's husband was also a plaintiff in this case.  He nonsuited all his claims against all parties in March 2022. (Doc. No. 1-24.)

The fourth amended petition alleged Deere's liability as the manufacturer of the gator.

Plaintiffs alleged:

> As designed, the gator was admittedly and knowingly made to be unstable in turns, and, therefore, likely to sway and overturn, as it did in this incident. This motion is known by [Deere] to cause the legs of occupants to swing outside the cabin, and be caught and broken or severed in a rollover. Doors, or even half doors, would prevent this occurrence. [Deere] has doors available as an option in – again – [admitted] knowledge this hazard. They should be required, not an option. This is in total violation of the long-accepted design hierarchy that safety is never to be an option, and that non-defective design requires a re-design, i.e., incorporating doors as a requirement, not an option, and the incorporation of guards and warnings – in sequence – if a redesign will not eliminate the hazard. [Deere] failed in all this, failed to warn of this hazard as well. The floors should not be flat and should have a lip to retain feet and legs inside the cab, in foreseeable rollovers.
>
> […] All of the above conduct by [Deere] amounts to defects in design and marketing, negligence, and gross negligence which caused the injuries and damages complained of in this case….

(Doc. No. 1-21, pp. 3-4) (emphasis deleted). With regard to Robstown, Plaintiff alleged:

> [Robstown was] independently negligent by not telling [the buyer] that doors were an option, and for safety purposes, required. Nor did [Robstown] install decals showing doors were required to prevent feet from involuntarily extruding [sic] the cab in a foreseeable rollover or contact situation with an obstruction in a turn. This gross negligence was an independent cause of the accident in question. The contentions against [Robstown] are independent claims that meet the exceptions of Texas Civil Practice and Remedies Code § 82.003. That, singularly or in combination with the conduct of [Deere] caused the Alex Smith level compound fracture of [Plaintiff's] leg….

*Id.* at 4.

Deere removed the action to federal court on June 16, 2022. (Doc. No. 1.) Deere contended that diversity jurisdiction existed, and that the only nondiverse defendant, Robstown Hardware ("Robstown") was improperly joined. *Id.* at 3, 4, 6-9. Plaintiff moved to remand the case to state court. (Doc. Nos. 5, 13.) Plaintiff contended, among other things, that Robstown was properly joined because three of the seven statutory exceptions permitting Robstown to be

held liable as a nonmanufacturing seller of the gator were present in this case.  Doc. No. 5, pp. 8-9; *see* Tex. Civ. Prac. & Rem. Code §§ 82.003(a)(2), (4), (5).  Defendants jointly argued in response that Plaintiff had failed to properly allege in her operative complaint that Robstown was liable under any of those three statutory exceptions or any other independent claim.  (Doc. No. 12, pp. 2, 6-14.)

The district court denied Plaintiff's remand motion.  (Doc. No. 22.)  The district court found that federal pleading standards apply to Plaintiff's removed complaint, *id.* at 13-14, and that Plaintiff had failed to allege a cognizable claim against Robstown under any of the three proffered statutory exceptions.  *Id.* at 17-19.  The district court did not, however, formally dismiss Robstown from the case.  The district court's ruling is discussed in greater detail below.

Plaintiff then filed an amended complaint on December 1, 2022, the last day permitted for amended pleadings under the scheduling order.  (Doc. Nos. 24, 26.)  Robstown moved for dismissal under Federal Rule of Civil Procedure 12(b)(1), arguing that the district court's denial of the motion to remand meant that Robstown had been improperly joined and that Plaintiff's claims against Robstown must be dismissed without prejudice.  (Doc. No. 29.)  Deere, meanwhile, moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff had failed to state a claim upon which relief may be granted.  (Doc. No. 28.)

Four days later, Plaintiff filed a motion for leave to file an amended complaint, along with a proposed (and revised) amended complaint intended to supersede the amended complaint filed on December 1.  (Doc. Nos. 30, 30-1.)  Plaintiff also responded to Deere's and Robstown's dismissal motions (Doc. Nos. 32, 33), and the defendants each replied.  (Doc. Nos. 34, 35.)  The defendants jointly filed an opposition to Plaintiff's motion for leave to amend the complaint.  (Doc. No. 36.)

4 / 33

On January 6, 2023, the defendants moved jointly for a protective order and to quash discovery requests submitted by Plaintiff to Robstown.  (Doc. No. 38.)  Plaintiff responded to that motion (Doc. No. 41), and the defendants replied.  (Doc. No. 42.)

### B.  Summary of the motions and the parties' arguments.

Thus, the following motions are currently pending and will be discussed in this memorandum:

- Plaintiff's motion for leave to amend the complaint (Doc. No. 30);

- Robstown's motion to dismiss for lack of subject matter jurisdiction (Doc. No. 29); and

- Deere's motion to dismiss for failure to state a claim upon which relief may be granted (Doc. No. 28).[2]

### 1.  Plaintiff's attempts to amend her complaint.

After the district court denied Plaintiff's motion to remand this case to state court, the district court issued a scheduling order that required, among other things, the joinder of any parties or the filing of any amended pleadings not later than December 1, 2022.  (Doc. No. 24.) The order provided that it "does not relieve the parties from the requirement of obtaining leave to file the pleading or add parties whenever required by the Federal Rules of Civil Procedure (e.g. Fed. R. Civ. P. 15(a)(2))."  *Id.*

On December 1, Plaintiff filed an amended complaint.  (Doc. No. 26.)  That amended complaint (the "December 1 amended complaint") was not accompanied by a motion for leave to file it.  The December 1 amended complaint states that Plaintiff "still contends that remand was

---

[2]  Defendants also have jointly filed a motion for a protective order and to quash discovery propounded by Plaintiff to Robstown.  (Doc. No. 38.)  That motion has been fully briefed, but the undersigned will address it separately from this memorandum.

improperly denied." *Id.* at 2.  The December 1 amended complaint's allegations are virtually identical to those in the previous complaint (the one that had been the subject of Plaintiff's motion to remand).  *Compare* Doc. No. 26, p. 4 *with* Doc. No. 1-21, pp. 3-4.

On December 16, 2022, after Robstown and Deere each filed motions to dismiss the December 1 amended complaint (Doc. Nos. 28, 29, discussed below), Plaintiff filed a motion for leave to amend her complaint, along with a proposed amended complaint (the "December 16 amended complaint").  (Doc. Nos. 30, 30-1.)

The December 16 amended complaint makes additional allegations against both Robstown and Deere.  With regard to Robstown, Plaintiff's additional allegation claim that Robstown was

> in the position of a learned intermediary and possessed the special knowledge about the use and the need for hard doors and their preventative nature in a rollover and in keeping the passengers inside the cabin so as to avoid severe injuries or amputation of limbs which are flung from the cabin in a foreseeable roll over event.  [Robstown], acting at all times through its agents, servants, vice-principles [sic], and employees failed to deliver the information and hard doors which the purchasers … had asked for, with this purchase.  By not complying with the industry standard to provide all the essential safety equipment needed with a product such as this gator that is preventative for the hazard, injuries, and damages or even foreseeable deaths that could occur without the presence of hard doors amounts to negligence which [proximately] caused the injuries and damages which are separate and apart from the negligence or defects of [Deere] for the causation of this accident and proximately caused injuries and damages associated with this roll over.

(Doc. No. 30-1, pp 8-9.)  Plaintiff does not specifically state in her amended complaint which of the seven statutory provisions for nonmanufacturing sellers was the basis for her amended complaint – she merely states, without elaboration, that the contentions "are independent claims that meet the exceptions of" § 82.003.  *Id.* at 4 ¶ 11.

With regard to Deere, Plaintiff adds allegations in the December 16 amended complaint (in addition to re-urging those in the previous version of the complaint), stating that the gator had design defects in that that it "did not include the standard lip or raised edge underneath the door edge of the gator and instead has a flat floor which does not prevent the out swinging of lower limbs even when belted passengers are involved in a roll over."  (Doc. No. 30-1, p. 6 ¶ 18.)  In addition, Plaintiff alleges that the gator did not offer hard doors as standard equipment but instead only as an option.  *Id.*  Plaintiff claims that Deere failed to engage in proper safety design and that the resulting product was unreasonably dangerous.  *Id.* at 6-8, ¶¶ 18, 21, 22, 24. Plaintiff further contends that the gator's marketing was defective because the instructions and labeling "did not insist that lower doors be present or in any way advise of the centrifugal force hazard which in a foreseeable roll over, would cause lower limbs to be involuntarily flung from the safety of the cabin enclosure."  *Id.* At 6-7, ¶¶ 19, 20, 23.  Finally, Plaintiff alleges that Deere was negligent by failing to inform its dealers (like Robstown) that doors "need to be made the subject of a safety informative presentation to any potential buyer so that the doors were part of a sale unless expressly and knowingly rejected by any potential buyer."  *Id.* at 8, ¶ 26.

Plaintiff's motion for leave to amend her complaint asserts that the December 1 amended complaint "was submitted on the last day possible presumed to the docket control order, solely to bring the pleadings within[] the Federal Court format."  (Doc. No. 30, p. 1, ¶ 2.)  Plaintiff states that the December 16 amended complaint "not only brings the complaint forward within the Federal filing format, but also now responds to the Defendants' 12(b)(6) motion, and supersedes any previous filing."  *Id.* ¶ 3.  Plaintiff likens the defendants' dismissal motions to a motion for a more definite statement, *id.* at 1-2, ¶ 4, and states that the December 16 amended complaint

"addresses the very issues raised by Defendants' motions.  Plaintiff should be allowed to amend and address these objections . . . ."  *Id.* ¶ 6.

In their December 29 joint opposition, the defendants argue against allowing Plaintiff to amend her complaint.  (Doc. No. 36.)  The December 1 amended complaint, the defendants say, has been filed without leave of court.  *Id.* at 3-4.  The December 16 amended complaint, they note, was filed more than two weeks after the amendment deadline.  *Id.* at 4.  This lateness, argue the defendants, means that the more exacting amendment standard of Federal Rule of Civil Procedure 16(b) applies ("good cause and with the judge's consent"), not the more liberal standard of Rule 15(a)(2) (court should freely give leave when justice so requires).  *Id.*  The defendants argue that Plaintiff has not addressed the good cause standard, much less shown good cause, *id.* at 5, and that Plaintiff has in any event failed to justify her tardy amendment attempt.  *Id.* at 5-9.

Plaintiff did not file a reply to the defendants' response.

### 2. *Robstown's motion to dismiss.*

On December 12, 2022, Robstown filed a motion to dismiss the December 1 amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Doc. No. 29.)  Robstown argues that the district court's denial of the motion to remand requires its dismissal of Robstown without prejudice.  *Id.* at 2-3 (citing *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016) ("When … a court determines a nondiverse party has been improperly joined to defeat diversity, that party *must* be dismissed without prejudice.") (emphasis in original).

In opposition, Plaintiff argues that improper joinder "is not the same as a finding of no subject matter jurisdiction i.e. that no notice of a valid claim has been made as to that defendant."

(Doc. No. 33, p. 2 ¶ 5) (emphasis deleted).  Plaintiff further argues that Robstown has "conceded and admitted" that it is "a local defendant which would otherwise destroy diversity jurisdiction, which was the basis of the removal." *Id.* ¶ 6.  Plaintiff further argues that she should be given the opportunity to amend her complaint, and that the December 16 amended complaint contains viable claims against Robstown.  *Id.* at 2-3, ¶ 8.  Plaintiff states her belief that the district court has not already dismissed Robstown because discovery has not yet been conducted, and argues that the court, "at a minimum, should defer its ruling until that discovery has occurred."  *Id.* at 3 ¶ 8; *see also id.* at 4 ¶ 12.  Finally, Plaintiff argues that the claims against Robstown "are based upon fraud misrepresentation and deceptive trade practices in tendering the Gator without the available hard doors to the purchasers . . . , who had specifically asked for every available option and all the 'bells and whistles' . . . .  This meets the 'fair notice' standard and 'sufficient facts' requirement to satisfy both Rules 8 and 12 . . . ."  *Id.* at 3-4 ¶ 10.

In reply, Robstown contends that the district court, by finding that Robstown was improperly joined, had already "effectively dismissed Plaintiff's claims against Robstown for lack of subject matter jurisdiction when it found Plaintiff improperly joined Robstown to defeat diversity jurisdiction…."  (Doc. No. 35, p. 1) (citation omitted); *see also id.* at 2-3.  Robstown also argues that Plaintiff cannot permissibly amend her pleading, because the district court lacks jurisdiction to permit repleading.  *Id.* at 3-4 (citing *Platsas Group Holdings, LLC v. Weiser, LLC*, No. CV H-20-1489, 2020 WL 9934406, at *4 n.21 (S.D. Tex. Sept. 28, 2020) (Werlein, J.).

### 3. Deere's motion to dismiss.

On December 12, 2022, Deere moved to dismiss Plaintiff's December 1 amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  (Doc. No. 28.)  Deere urges dismissal because Plaintiff's strict

liability design defect claim does not allege that the gator was unreasonably dangerous or adequately allege a safer alternative design or causation. *Id.* at 2-4. Deere also argues that the strict liability marketing defect claim fails to allege that the gator was unreasonably dangerous and fails to allege "Deere's knowledge of a risk of harm or causation." (Doc. No. 28, pp. 2, 4-6.) Also lacking, Deere contends, is Plaintiff's negligence claim, "for the same reasons as her strict liability design defect and marketing defect claims." *Id.* at 2, 6-7. Deere also argues for dismissal of Plaintiff's gross negligence and punitive damages claims, because Plaintiff's underlying allegations are inadequate and because there is no allegation supporting a punitive damages award. *Id.* at 2, 7-9. Finally, Deere asserts that Plaintiff's claim for attorney's fees should fail because Plaintiff has not pleaded a cause of action allowing for recovery of attorney's fees. *Id.* at 2, 9. Deere alternatively requests that Plaintiff be ordered to amend its pleading to comply with Federal of Civil Procedure 10(b)'s pleading requirements. *Id.* at 9-10.[3]

In its December 22 opposition (submitted after the December 16 motion for leave to amend the complaint), Plaintiff responds that she has "amended her complaint to address all the arguments in [Deere's] Rule 12(b)(6) motion, therefore, [Deere's] motion is meritless, and should be denied." (Doc. No. 32, p. 4 ¶ 4.) The remainder of Plaintiff's response essentially recaps the allegations contained in the December 16 amended complaint. *See id.* at 2-6.

Replying, Deere argues that Plaintiff should not be allowed to amend her complaint and that the Court should consider the December 1 amended complaint and dismiss it. (Doc. No. 34, p. 1.) Deere also argues that, because the December 16 amended complaint has not yet been

---

[3] That rule states: "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense." Fed. R. Civ. P. 10(b).

accepted for filing by the Court, Plaintiff's motion response reiterating the statements in the December 16 amended complaint effectively raises claims and allegations for the first time in response to the Rule 12(b)(6) motion.  *Id.* at 2.

### C. Robstown is improperly joined.  Plaintiff's claim against Robstown should be dismissed without prejudice.

Deere and Robstown removed this case to federal court on the basis of diversity jurisdiction, claiming that Robstown had been improperly joined because Plaintiff could not establish a cause of action against Robstown in state court.  (Doc. No. 1, pp. 4, 6 (citing *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)).)  This, the defendants argued, was because Robstown was immune from suit as a nonmanufacturing seller of the gator.  *Id.* at 6-9; *see* Tex. Civ. Prac. & Rem. Code § 82.003(a).  Because Plaintiff had not plausibly alleged that Robstown was subject to one of § 82.003(a)'s seven exceptions, Plaintiff had no possibility to recover in state court against Robstown.  *Id.* at 8 (citing *Sanders v. Husqvarna, Inc.*, No. 3-12-258, 2012 WL 5210682, at *2 (S.D. Tex. Oct. 22. 2012) (Costa, J.)).  Plaintiff sought remand, arguing that it had successfully alleged any of three different statutory exceptions allowing a claim against Robstown as a nonmanufacturing seller (Doc. Nos. 5, 13), but the district court rejected all three of those arguments and denied the motion to remand.  (Doc. No. 22.)

Although the district court did not immediately issue an order dismissing Robstown from this case, the district court's finding was clear: this case was to remain in federal court and not be remanded to state court, because Robstown was improperly joined.  *See* Doc. No. 22, pp. 18-19. Because Robstown is an improperly joined party, it must be dismissed.  The undersigned recommends that the district court grant Robstown's Rule 12(b)(1) and dismiss Plaintiff's claim

against Robstown without prejudice for lack of subject matter jurisdiction.  *See Int'l Energy Ventures Mgmt.*, 818 F.3d at 209-10.

Plaintiff's belief that Robstown should remain as a defendant in this case for purposes of discovery, until perhaps additional facts might be unearthed that would justify jurisdiction, lacks merit.  *See* Doc. No. 33, p. 3 ¶ 8.  Because the Court lacks jurisdiction to proceed with the case while a nondiverse party wrongly remains joined, "the *only* issue the Court may consider is that of jurisdiction itself."  *Int'l Energy Ventures Mgmt.*, 818 F.3d at 209 (emphasis in original).

The defendants, however, are also incorrect in their belief that Robstown has already been dismissed from this case.  The Fifth Circuit's decision in *International Energy Ventures Management* exemplifies why.  Because the district court in that case denied a motion to remand based on improper joinder, the Fifth Circuit found that the district court "effectively dismissed the claims" against the nondiverse party without prejudice.  *Int'l Energy Ventures Mgmt.*, 818 F.3d at 209.  This is the language seized upon by the defendants to contend that Plaintiff's claim against Robstown is already dismissed.  But the reason the Fifth Circuit used the words "effectively dismissed," however, is because the district court in that case did not issue an order dismissing the nondiverse party without prejudice; rather, the district court went on to grant a Rule 12(b)(6) dismissal with prejudice in favor of the nondiverse party.  *Id.* at 210.  That was improper, the Fifth Circuit found, because the district court lacked jurisdiction to issue such an adjudication on the merits – which is what a Rule 12(b)(6) dismissal does.  *Id.*  To unwind the district court's erroneous grant of the Rule 12(b)(6) motion, the Fifth Circuit remanded the case with instructions for the district court to vacate its grant of the motion to dismiss for failure to state a claim and to dismiss the claim against the nondiverse defendant without prejudice.  *Id.* at 213.  Thus, the defendant's view that dismissal without prejudice essentially occurs

automatically by virtue of the district court's denial of the remand motion is incorrect. The appropriate step is to dismiss Robstown without prejudice. The undersigned recommends the district court do so.

### D. Plaintiff's motion for leave to amend with regard to Robstown should be denied, because her proposed amended complaint against Robstown is futile.

Dismissal of Robstown without prejudice, however, does not mean that Plaintiff's case against Robstown is necessarily over. Plaintiff theoretically could amend her complaint to rejoin Robstown as a defendant in this case. But she can do so only if she can allege a new and viable claim under federal pleading standards. Plaintiff has already submitted the December 1 and December 16 amended complaints. Review of those proposed amended complaints, however, reveals that Plaintiff's proposed claim is not viable. Thus, the district court should deny Plaintiff's motion for leave to amend her complaint with regard to Robstown. This is the case regardless of whether the more liberal amendment standard of Federal Rule of Civil Procedure 15(a)(2) or the more demanding standard of Federal Rule of Civil Procedure 16(b) is applied.

After removal, a party may seek to join a defendant whose joinder would destroy subject matter jurisdiction. The court may either deny that joinder, or permit it and remand the action to state court. 28 U.S.C. § 1447(e). "When an amendment would destroy jurisdiction, most authorities agree that leave should be denied unless there exist strong equities in its favor." *Whitworth v. TNT Bestway Transp., Inc.*, 914 F. Supp. 1434, 1435 (E.D. Tex. 1996) (quoting 6 Wright, Miler & Kane, Federal Practice & Procedure: Civil, § 1447, at 562 (2d ed. 1990)). When analyzing a party's bid to add a nondiverse party, the amended complaint is the operative pleading for review. *See Cavallini v. State Farm Mut. Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995). The court should scrutinize the amendment "more closely than an ordinary amendment."

*Coulter v. Deere & Co.*, No. 4:21-cv-2105, 2022 WL 3212999, at *2 (S.D. Tex. Aug. 9, 2022) (Rosenthal, C.J.) (quoting *Moore v. Manns*, 732 F.3d 454, 456 (5th Cir. 2013) (per curiam)); *see also Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).

As in *Coulter*, the district court has previously found that Robstown was improperly joined based on the claim that Plaintiff has asserted against it as the seller of the gator.  Plaintiff can, however, attempt to "bring new and different claims based on a different theory of liability" against Robstown post-removal.  *See Coulter*, 2022 WL 3212999, at *2.  In determining whether adding such a nondiverse defendant is permissible, courts apply the three factors set forth in *Hensgens*: the extent to which the purpose of the amendment is to defeat federal jurisdiction; whether the plaintiff has been dilatory in asking for the amendment; and whether the plaintiff would be significantly prejudiced if the amendment is not allowed.  *See* 833 F.2d at 1182.

Before reaching that analysis, however, the court must determine whether the proposed new claim is viable at all.  If not, then the amendment is futile and should not be permitted.  *See Lott v. Cougar Drilling Solutions USA, Inc.*, No. 22-1292, 2022 WL 17672627, at *1 (S.D. Tex. Dec. 14, 2022) (Rosenthal, J.) (applying Rule 15(a)(2): "While a court should 'freely give leave [to amend] when justice so requires,' … futility of amendment is a proper basis to deny that leave.") (bracketed text in original) (citing *Butler v. Porter*, 999 F.3d 287, 298 (5th Cir. 2021)); *see also Adams Fam. Tr. v. John Hancock Life Ins. Co.*, 424 F. App'x 377, 381 n.9 (5th Cir. 2011) (a "futile amendment need not be allowed under Rule 16(b)"); *cf. Planeta, LLC v. Scottsdale Ins. Co.*, No. H-18-3323, 2019 WL 3067111, at *3 (S.D. Tex. Jan. 9, 2019) (Werlein, J.) (after denying motion to remand, court denies motion to amend complaint as futile).  "An amendment is futile if, after the amendment, the complaint would still 'fail to state a claim upon which relief could be granted.'"  *Burnette v. RateGenius Loan Services, Inc.*, 671 F. App'x 889,

14 / 33

894 (5th Cir. 2016) (quoting *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000)).  As discussed next, analysis of Plaintiff's proposed amended complaint does not reveal a viable new claim against Robstown, and the undersigned therefore recommends denial of leave to amend.

The proposed amendment is assessed with reference to federal pleading standards.  *See* Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief).  Courts are to assess whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The requirement for facial plausibility is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The pleading standard does not require detailed factual allegations, "but does demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Hurd v. Barnette*, No. 6:15cv734, 2017 WL 9289643, at *11 (E.D. Tex. Jan. 24, 2017), *adopted*, 2017 WL 892118 (E.D. Tex. Mar. 6, 2017) (citing *Iqbal*, 556 U.S. at 677-78).  As the district court noted, "[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  (Doc. No. 22, p. 14) (citing *Giancarlo v. UBS Fin. Servs., Inc.*, 725 F. App'x 278, 282 (5th Cir. 2018) (in turn citing *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Plaintiff's proposed amended complaint claims injury stemming from an allegedly defective product: she was allegedly injured when the gator rolled over, and claims that the gator

was defective.  Her claim must therefore be brought under Chapter 82 of the Texas Civil Practice

and Remedies Code.  Under Texas law, a "products liability action" means "any action against a

manufacturer or seller for recovery of damages arising out personal injury . . . allegedly caused

by a defective product whether the action is based in strict tort liability, strict products liability,

negligence, misrepresentation, breach of express or implied warranty, or any other theory or

combination of theories."  Tex. Civ. Prac. & Rem. Code § 82.001(2).

Plaintiff does not allege that Robstown, which sold the gator, is the gator's manufacturer.

Texas law provides immunity from liability for "nonmanufacturing sellers" in all but seven

circumstances.  If none of these seven exceptions apply, then Robstown cannot be held liable.

The seven exceptions are: (1) the seller participated in the design of the product; (2) the seller

altered or modified the product and the claimant's harm resulted from that alteration or

modification; (3) the seller installed the product, or had the product installed, on another product

and the claimant's harm resulted from the product's installation onto the assembled product; (4)

the seller exercised substantial over the content of a warning or instruction that accompanied the

product, the warning was inadequate, and the claimant's harm resulted from the inadequacy of

the warning or instruction; (5) the seller made an express factual representation about an aspect

of the product, the representation was incorrect, the claimant relied on the representation in

obtaining or using the product, and if the aspect of the product had been as represented, the

claimant would not have been harmed by the product or would not have suffered the same degree

of harm; (6) the seller actually knew of a defect to the product at the time the seller supplied the

product, and the claimant's harm resulted from the defect; and (7) the manufacturer of the

product is either insolvent or not subject to the jurisdiction of the court.  *See* Tex. Civ. Prac. &

Rem. Code §§ 82.003(a)(1)-(7).  Analyzing Plaintiff's proposed amended complaint, the

undersigned finds that Plaintiff fails to allege any new claim that is viable under any of the seven exceptions.

The December 1 amended complaint (Doc. No. 26), although timely, was unaccompanied by a motion for leave to file it.  The December 1 amended complaint is virtually identical to Plaintiff's prior operative pleading, and contains no new allegations of liability against Robstown.  The undersigned therefore concludes that permitting Plaintiff to amend her prior complaint with the December 1 complaint would be futile, even under Rule 15(a)(2)'s liberal grant standard, because the district court has already found that Plaintiff's complaint did not allege a viable claim against Robstown.

The December 16 amended complaint, meanwhile, was proffered after the expiration of the pleading amendment deadline.  (Doc. No. 30-1.)  It unhelpfully fails to specify which of the seven statutory exceptions Plaintiff believes apply to affix liability to Robstown, stating merely that Robstown's conduct "meet[s] the exceptions of . . . § 82.003."  *Id.* at 4.  Nevertheless, the undersigned has examined the December 16 amended complaint and the record and found no new claim by Plaintiff alleging that Robstown has engaged in conduct involving any of the three exceptions previously litigated.

The December 16 amended complaint alleges that Robstown was "in the position of a learned intermediary and possessed the special knowledge about the use and the need for hard doors and their preventative nature in a rollover and in keeping the passengers inside the cabin so as to avoid severe injuries or amputation of limbs which are flung from the cabin in a foreseeable roll over event."  (Doc. No. 30-1, p. 8.)  The complaint continues: "[Robstown], acting at all times through its agents, servants, vice-principles [sic], and employees failed to deliver the information and hard doors which the purchasers . . . had asked for, with this purchase."  *Id.*

It is not clear which of the seven exceptions Plaintiff seeks to invoke by these allegations. Plaintiff previously argued that the complaint she sought to remand to state court alleged Robstown's liability under exceptions 2 (seller modified the product), 4 (seller exercised substantial control over a warning), and 5 (seller made express incorrect factual representation). (Doc. No. 5, p. 8 ¶ 16.)  The district court rejected those arguments in denying the motion to remand.  (Doc. No. 22, pp. 16-18.).  The undersigned discerns no new factual allegations related to any of those three exceptions in the December 16 amended complaint.  There is no claim that Robstown altered or modified the gator (exception 2), that Robstown exercised substantial control over any inadequate warning or instruction (exception 4), or that Robstown made any express factual representation about the gator that was incorrect (exception 5).  Plaintiff asserts that Robstown "failed to deliver" information, but that is not an allegation of an express factual representation.  The district court found likewise in denying the motion to remand.  (Doc. No. 22, p. 18.)

Plaintiff alleges no facts in the December 16 amended complaint indicating that Robstown participated in the design of the gator (exception 1), or that Robstown altered the gator by assembling it together with some other product (exception 3), or that Deere is insolvent or is outside the Court's jurisdiction (exception 7).  Giving Plaintiff the benefit of the doubt,[4] the undersigned suspects that perhaps Plaintiff now seeks to invoke the only remaining statutory exception under which liability could attach: exception 6.  To allege a viable claim under that

---

[4] "Giving Plaintiff the benefit of the doubt" is being generous.  Pleadings are to be construed so as to do justice, *see* Fed. R. Civ. P. 8(b), but Plaintiff is represented by counsel, and so her pleading is not entitled to the liberal construction that would normally be accorded to a *pro se* litigant.  *See Beasley v. McCotter*, 798 F.2d 116, 118 (5th Cir. 1986).  In the interests of thoroughness, and in fairness to Plaintiff herself, the undersigned analyzes what Plaintiff, through counsel, perhaps intends to claim, even though that analysis likely extends beyond Rule 8(b)'s requirement.

exception, Plaintiff would have to allege that Robstown actually knew of a defect to the gator at the time Robstown provided the gator to the seller, and that Plaintiff's harm resulted from the defect.  Tex. Civ. Prac. & Rem. Code § 82.003(a)(6).  Here, Plaintiff alleges that Robstown was a "learned intermediary and possessed the special knowledge about the use and the need for hard doors."  (Doc. No. 30-1, p. 8.)  This does not suffice to allege a viable claim under exception 6.

Exception 6 is definitive in its terms: a nonmanufacturing seller can be held liable under exception 6 only if it "actually knew of a defect to the product."  Tex. Civ. Prac. & Rem. Code § 82.003(a)(6).  Exception 6 "means just what it says."  *Ray v. FCA US LLC*, No. 2:17-CV-86, 2017 WL 3033425, at *4 (S.D. Tex. July 17, 2017) (Tagle, J.).  The exception cannot be satisfied by a showing of negligent oversight, constructive knowledge, or similar allegations that a seller could or should have known of a defect in a product.  *Id.*  Additionally, "the defendant's actual knowledge must relate to the defect itself."  *Id.* (citing *Blythe v. Bumbo Int'l Trust*, No. 6:12-CV-36, 2013 WL 6190284, at *5 (S.D. Tex. Nov. 26, 2013) (Costa, J.); *Mix v. Target Corp.*, 759 F. Supp. 2d 876, 880 (W.D. Tex. 2010)).

Plaintiff's attempted claim can be rejected because it does not allege that Robstown had actual knowledge of any defect.  Plaintiff's assertion throughout this litigation has been that the gator was defective because it did not have hard doors as standard equipment and because the gator's floor did not have a "lip" to retain feet and legs inside the vehicle.  *See*, *e.g.*, Doc. No. 1-21, pp. 3-4 (fourth amended petition in state court); Doc. No. 30-1, p. 3 ¶ 9 (December 16 amended complaint).  In the December 16 amended complaint, Plaintiff alleges merely that Robstown had "special knowledge" and that Robstown was a "learned intermediary."  Plaintiff is not entitled to a liberal construction of her pleading because she is represented by counsel, but even a generous reading of these terms does not permit an inference that Robstown had actual

knowledge of any defect that exception 6 requires.  At most, the allegation might permit an inference that Robstown was familiar with gators, because it sells them, and even that Robstown had greater knowledge than the gator's buyers.  At the very most, perhaps Plaintiff's allegation could be viewed as claiming Robstown knew that selecting the optional hard doors could be desirable or advisable.  *See id.* at 8 (alleging that Robstown possessed "special knowledge about the use and need for hard doors and their preventative nature in a rollover and in keeping the passengers inside the cabin . . . .")  But Plaintiff's threadbare allegation of "special knowledge" – and it is threadbare – simply cannot be stretched so far as to be viewed as an allegation that Robstown actually knew that the absence of hard doors or a "lip" rendered the gator defective.  *Cf. Coulter*, 2022 WL 912778, at *3 (plaintiff's "general allegations of actual knowledge are insufficient to state a claim against a nonmanufacturer under" exception 6).  Because Plaintiff alleges no facts indicating that Robstown had actual knowledge of any defect, Plaintiff's allegation is essentially that Robstown should have known, because of its purported special knowledge, that the gator was defective without hard doors or the "lip."  That is insufficient to state a claim under exception 6.  *See Ray*, 2017 WL 3033425, at *4; *Garcia*, 2013 WL 12137090, at *3.[5]

Because Plaintiff fails to plausibly allege a claim under exception 6, or any of the other statutory exceptions, she cannot sue Robstown as a nonmanufacturing seller for any injury she

---

[5]  It is unclear what Plaintiff means when characterizing Robstown as a "learned intermediary."  (Doc. No. 30-1, p. 8.)  That term refers to a doctrine applied under Texas law in medical products liability actions.  Under the doctrine, a manufacturer satisfies its duty to warn the end user of its product's potential risks by providing an adequate warning to a "learned intermediary," who then assumes the duty to pass on the necessary warnings to the end user.  *See In re DePuy Orthopedics, Inc. Pinnacle Implant Prod. Liab. Lit.*, 888 F.3d 753, 774 (5th Cir. 2018) (citing *Centocor, Inc. v. Hamilton*, 372 S.W.2d 140, 142 (Tex. 2012)).  The undersigned has not found any authority applying the doctrine outside the context of medical products liability cases.  In any event, the doctrine is typically invoked by defendants in such lawsuits, not by plaintiffs.  The undersigned therefore interprets Plaintiff's use of the term "learned intermediary" to describe Robstown as meaning simply that Robstown possessed knowledge superior to that of the gator's purchasers.

suffered as a result of any alleged defect with the gator.  Plaintiff's attempts to posture her claims as alleging "independent acts of negligence" (Doc. No. 30-1, p. 8 ¶ 27) or a "deceptive trade practice" (Doc. No. 32, p. 4; Doc. No. 33, p. 1 ¶ 3) are unavailing.  Section 82.003 applies to "products liability actions," which include any action against a manufacturer or seller for recovery of damages arising out of – as relevant in this case – personal injury allegedly caused by a defective product.  This includes actions based in tort law, contract law, or any other theory or combination of theories.  Tex. Civ. Prac. & Rem. Code § 82.001(2).  "Section 82.003 claims are not dependent upon whether the plaintiff labeled the claims as products-liability claims, but rather on whether liability arises out of [] personal injuries … caused by a defective product." *Baird v. Wernerco Svcs, Inc.*, No. H-18-1908, 2019 WL 3753694, at *3 (S.D. Tex. Aug. 6, 2019) (Miller, J.) (citing *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999)); *see also Garnett v. Remington Arms Co., LLC*, No. W-17-CV-00263-RP, 2018 WL 4688813, at *5 (W.D. Tex. June 14, 2018) (rejecting plaintiff's attempt to avoid § 82.003's limitations because Texas Deceptive Trade Practices Act claims fall within the scope of Chapter 82 products liability actions) (citing *Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 491 (5th Cir. 1999)).

Plaintiff's allegations must satisfy one of the seven exceptions set out in § 82.003.  They do not, so Plaintiff's proposed amendment regarding Robstown is futile and should not be permitted.

### E.  Plaintiff's attempt to plead new claims against Deere is not obviously futile.

The December 16 amended complaint also revised Plaintiff's allegations against Deere. These revisions, Plaintiff says, were in response to Deere's Rule 12(b)(6) motion to dismiss (as well as Robstown's dismissal motion), and "addresses the very issues raised by Defendants'

motions." (Doc. No. 30, p. 4 ¶ 6; *see also* Doc. No. 28.) Unlike her attempt to plead claims against Robstown, Plaintiff asserts at least one claim against Deere in the December 16 amended complaint that is not obviously futile.

The December 16 amended complaint appears to contain several asserted causes of action. Those causes of action are not labeled; all are grouped together with one another and with those against Robstown. *See* Doc. No. 30-1, pp. 3-10. At least one of these claims, alleging a design defect, is sufficiently alleged such that the undersigned concludes that Plaintiff's December 16 amended complaint would not be obviously futile.

As discussed above, Texas law sets forth specific requirements for lawsuits alleging products liability. *See* Tex. Civ. Prac. & Rem. Code Chapter 82. A products liability action involving a design defect must meet the criteria set forth in § 82.005. The burden in such actions is on the claimant to prove by a preponderance of the evidence that "there was a safer alternative design" and that "the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery." Tex. Civ. Prac. & Rem. Code §§ 82.005(a)(1)-(2); *Smith v. Robin Am., Inc.*, 484 F. App'x 908, 917 (5th Cir. 2012). The alleged design defect must, moreover, render the product unreasonably dangerous. *DePuy Orthopaedics*, 888 F.3d at 765 (citing *Casey v. Toyota Motor Eng'g & Mfg., N.A.*, 770 F.3d 322, 330 (5th Cir. 2014)). A "safer alternative design," as applicable here, means one that in reasonable probability "would have prevented or significantly reduced the risk of the claimant's personal injury" without "substantially impairing the product's utility," and "was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing reasonably achievable scientific knowledge." Tex. Civ. Prac. & Rem. Code § 82.005(b).

Here, Plaintiff alleges that Deere's design of the gator was defective, in that it was allegedly "made to be unstable in turns, and, therefore, likely to sway and overturn." (Doc. No. 30-1, p. 3 ¶ 9; *see also id.* ¶ 10.) Plaintiff contends that Deere knew that this motion causes "the legs of occupants to swing outside the cabin, and be caught and broken or severed in a rollover. Doors, or even half doors, would prevent this occurrence." *Id.* at 3 ¶ 9. Plaintiff alleges that Deere offers such doors, but only as an option, not as standard equipment. *Id.*; *see also id.* at 6 ¶ 18. Plaintiff alleges that the gator was therefore unreasonably dangerous. *Id.*; *see also id.* at 7 ¶ 22.

Plaintiff also asserts that the gator was defective because it "did not include the standard lip or raised edge underneath the door edge of the gator and instead has a flat floor which does not prevent the out swinging of lower limbs even when belted passengers are involved in a roll over." (Doc. No. 30-1, p. 6 ¶ 18.) Plaintiff alleges that the gator's "floors should not be flat and should have a lip to retain feet and legs inside the cab, in foreseeable rollovers." *Id.*

Plaintiff asserts that these flaws "amount[] to defects in design . . . , negligence which caused the injuries and damages complained of . . . ." (Doc. No. 30-1, p. 3 ¶ 10.) The presence of standard doors would, Plaintiff says, have "prevented the centrifugal force swing of [Plaintiff's] right leg . . . ." *Id.* at 5 ¶ 17. Plaintiff additionally alleges that the inclusion either of the "lip" or of hard doors as standard equipment, or both, amount to a safer alternative design: "any or both or all of these design preferences []were technologically and economically feasible as alternative designs which would not have substantially impaired the product[']s utility in any meaningful way and would have prevented or significantly reduced the risk of injuries such as those suffered by Plaintiff." *Id.* at 7 ¶ 22.

Deere's motion to dismiss the December 1 amended complaint (Doc. No. 28) cited several reasons why that proposed amended complaint should be dismissed.  All of those alleged faults appear to have been addressed, to one degree or another, by the December 16 amended complaint: Plaintiff asserts that the gator was unreasonably dangerous, and that the dangerousness stems from the absence of hard doors as standard equipment or the absence of a lip to keep occupants' legs inside the gator.  *See* Doc. No. 28, p. 3; Doc. No. 30-1, pp. 2 ¶ 8, 6 ¶ 18.  Plaintiff asserts that having either hard doors as standard equipment, or a lip, or both, would constitute a safer alternative design, that either or both of those changes were technologically and economically feasible, and that either or both of those changes would have prevented or significantly reduced the risk of Plaintiff's injury without reducing the gator's utility.  *See* Doc. No. 28, p. 3; Doc. No. 30-1, pp. 6 ¶ 18, 7 ¶ 22.  And Plaintiff contends that the defects caused her injury, because she alleges that hard doors or a lip would have prevented the "centrifugal force swing" of Plaintiff's right leg out of, and then under, the gator.  *See* Doc. No. 28, p. 4; Doc. No. 30-1, p. 5 ¶ 17.

The undersigned concludes that the December 16 amended complaint is not obviously futile.  The undersigned thus addresses next whether Plaintiff's requested amendment should be permitted.

### F.  Good cause exists under Rule 16(b) to permit amendment.

Plaintiff submitted the December 1 amended complaint on the last day permitted for amended pleadings by the district court's scheduling order.  *See* Doc. Nos. 24, 26.  Plaintiff did not accompany her amended complaint with a motion for leave to file it.  Such leave was required.  *See* Fed. R. Civ. P. 15(a).  After the defendants moved to dismiss the December 1 amended complaint (Doc. Nos. 28, 29), Plaintiff submitted the December 16 amended complaint,

appended to a motion for leave to file that complaint.  (Doc. Nos. 30, 30-1.)  That submission occurred after the December 1 amended pleading deadline.

Plaintiff argues that leave to amend her complaint should be assessed under Federal Rule of Civil Procedure 15(a)(2), which provides that when leave to amend is required it should be "freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The December 16 amended complaint, however, was filed after the December 1 deadline for amendment of pleadings.[6] Thus, Rule 15(a) does not immediately apply; instead, the more stringent requirements of Federal Rule of Civil Procedure 16(b)(4) first take effect.  Rule 16(b)(4) "'governs amendment of pleadings after a scheduling order deadline has expired.'"  *Olivarez v. T-Mobile USA, Ltd.*, 997 F.3d 595, 602 (5th Cir. 2021) (quoting *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003)).

Under Rule 16(b)(4), a scheduling order, once issued, "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The rule's good cause standard requires a showing by the movant that the scheduling order's deadlines "cannot reasonably be met despite the diligence of the party needing the extension."  *S&W Enters.*, 315 F.3d at 535 (quotation omitted).  If the movant demonstrates good cause to modify the scheduling order, then Rule 15(a)'s more liberal amendment standard applies to the court's decision whether to grant

---

[6]  The undersigned considered whether the December 16 amended complaint, with its accompanying motion, could be considered to have in some way "related back" to the December 1 amended complaint, which, although filed without leave, was at least filed before the scheduling order's deadline and thus perhaps could subject the December 16 amended complaint to review under the Rule 15(a)(2) standard.  The undersigned found no principled way to view the December 16 amended complaint in that manner.  Additionally, Plaintiff filed the December 16 amended complaint only after the defendants went to the trouble and expense of filing a motion to dismiss the December 1 amended complaint.  Plaintiff also stated that the December 16 amended complaint was intended to address the deficiencies identified in the motion to dismiss, and was intended to supersede the December 1 amended complaint. The undersigned concludes that the December 16 amended complaint should be viewed in its own right, and not as some sort of technical or ministerial correction of the December 1 amended complaint (if even that type of amendment could be considered as qualifying for analysis under Rule 15(a)(2)).

leave to amend.  *Olivarez*, 997 F.3d at 602.  Plaintiff bears the burden of demonstrating good cause, as the party seeking to modify the scheduling order to permit her to file the December 16 amended complaint.  *See Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 236-27 (5th Cir. 2015); *HCC Ins. Holdings, Inc. v. Remeika*, No. H-15-2564, 2016 WL 4272345, at * 4 (S.D. Tex. Aug. 15, 2016) (Rosenthal, J.).

Rule 16(b)'s good cause standard is viewed in light of four factors: the explanation for the failure to timely move for leave to amend; the importance of the amendment; potential prejudice in allowing the amendment; and the availability of a continuance to cure such prejudice.  *Crown Castle Fiber LLC v. City of Pasadena*, No. H-20-3369, 2022 WL 3040417, at *5 (S.D. Tex. Aug. 2, 2022) (Hittner, J.) (citing *S&W Enters.*, 315 F.3d at 355)).  Moreover, the good cause standard requires the party seeking relief to show that "the deadlines cannot reasonably be met despite the diligence of the party needing the extension."  *Squyres*, 782 F.3d at 237 (quoting *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (per curiam)).  The undersigned's analysis here is made significantly more difficult, however, by Plaintiff's failure to acknowledge Rule 16(b)(4)'s good cause standard or to brief her compliance with it.  Even when the defendants contend in their response opposing Plaintiff's motion for leave to amend that Rule 16(b)(4)'s good cause standard applies and that Plaintiff has failed to satisfy that standard (Doc. No. 36, pp. 5-9), Plaintiff has not filed any reply.

The defendants suggest that the Court can summarily reject Plaintiff's amendment based solely on the failure to offer an explanation for the late attempted amendment.  *See* Doc. No. 36, p. 6 (citing, *e.g.*, *Mallory v. Lease Supervisors, LLC*, No. 3:17-CV-3063-D, 2019 WL 3253364, at *1 (N.D. Tex. July 19, 2019)).  But the grounds upon which Plaintiff does rely, though meager in detail, sufficiently enable the undersigned to apply the pertinent four-factor test.  *Cf. Nieves v.*

*John Bean Technologies Corp.*, No. 3:13-CV-4059-D, 2014 WL 2587577, at *2 (N.D. Tex. June 10, 2014). The undersigned therefore declines the defendants' invitation to recommend summary denial of the motion to amend, and analyzes all four of the factors set forth in *S&W Enterprises*.

### 1. *Explanation for failure to timely move to amend.*

The first factor weighs strongly against Plaintiff. Again, the deadline for amendment of pleadings was December 1, 2022, and Plaintiff filed an amended complaint on that date, without a motion for leave to amend. (Doc. No. 26.) Later, in her December 16 motion for leave to amend, Plaintiff stated that the December 1 amended complaint "was submitted on the last day possible presumed to the docket control order, solely to bring the pleadings within[] the Federal Court format." (Doc. No. 30, p. 1, ¶ 2.) Plaintiff does not offer any explanation why the December 1 amended complaint was submitted without a motion for leave to amend. Plaintiff further stated that the December 16 amended complaint "not only brings the complaint forward within the Federal filing format, but also now responds to the Defendants' 12(b)(6) motion, and supersedes any previous filing." *Id.* ¶ 3. Plaintiff likens the defendants' dismissal motions to a motion for a more definite statement, *id.* at 1-2, ¶ 4, and states that the December 16 amended complaint "addresses the very issues raised by Defendants' motions. Plaintiff should be allowed to amend and address these objections . . . ." *Id.* ¶ 6. When the defendants contended, in their response opposing Plaintiff's motion for leave to amend, that Rule 16(b)(4)'s good cause standard applied and that Plaintiff had failed to satisfy that standard, Plaintiff failed to file any reply.

Plaintiff has proffered a reason for submitting the December 16 amended complaint – to respond to the deficiencies pointed out in the dismissal motions. But for all the discussion of

27 / 33

what Plaintiff did *after* the December 1 deadline, Plaintiff fails to offer any reason why she did not submit an amended complaint that complied with federal pleading requirements *prior to* the December 1 deadline – a complaint that the defendants were then forced to move to dismiss. That is the untimeliness that must be explained, and Plaintiff offers no explanation for this tardiness.

Additionally, contrary to Plaintiff's characterization, Deere's Rule 12(b)(6) motion to dismiss was certainly not akin to a motion for more definite statement. A motion for more definite statement may be sought when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Here, Deere did not assert that it could not understand the December 1 amended complaint: Deere asserted that the amended complaint was so deficient that it failed to state any claim upon which relief may be granted. Deere sought an adjudication on the merits under Rule 12(b)(6), not clearer allegations under Rule 12(e).

### 2. *Importance of the amendment.*

The defendants argue that the "importance of the amendment" factor weighs in their favor as well, contending that the amendment must be unimportant because Plaintiff failed to explain her delay in seeking it and failed to satisfy the federal pleading requirements when she filed the December 1 amended complaint. (Doc. No. 36, p. 7.) But, in this context, amendments are considered "important" when they "potentially provide additional grounds for a party to recover or directly affect a party's prospects of ultimate recovery." *Trench Tech Int'l, Inc. v. Tech Con Trenching, Inc.*, No. 4:19-CV-00201-O, 2021 WL 9095768, at *3 (N.D. Tex. Sept. 22, 2021) (citations, internal quotations, and brackets omitted). Here, because Plaintiff has not briefed her motion under the Rule 16(b)(4) good cause standard, she makes no attempt to show

that the proposed amendment is important.  But Plaintiff does state that the amended complaint "brings the complaint forward within the Federal filing format" and addresses the deficiencies identified by the defendants (Doc. No. 30, p. 1 ¶ 3; *id.* at 2 ¶ 7), indicating that the amendment is important to Plaintiff because it facilitates her statement of viable federal claims.  The undersigned finds that allowing the December 16 amendment would focus the issues in this litigation, allowing (and in Plaintiff's case, forcing) the parties to litigate based on claims articulated according to federal pleading standards.  The December 16 amended complaint inches Plaintiff's claims nearer to the federal pleading standard.  The undersigned is not prejudging the viability of any of Plaintiff's claims in the December 16 amended complaint (hence the finding above that Plaintiff's proposed amendment is "not obviously futile"), but the amendment does appear to directly affect Plaintiff's prospects for recovery.

### 3. Potential prejudice in allowing the amendment, and whether any available continuance would cure that prejudice.

Courts sometimes consider the third and fourth factors together, *e.g.*, *Aircraft Holding Solutions, LLC v. Learjet, Inc.*, No. 3:18-CV-0823-D, 2021 WL 2434840, at *6 (N.D. Tex. June 15, 2021) (assessing the third and fourth good cause factors simultaneously), and the undersigned finds that approach appropriate here.  The defendants argue that Plaintiff fails to carry her burden with regard to the third factor, because the defendants have been forced to research and file motions to dismiss and a response to Plaintiff's motion for leave to amend, and that the defendants would be forced to endure another round of motion practice regarding the amended complaint if the Court permits it.  (Doc. No. 36, pp. 8-9.)

But the amendment, if permitted, would scarcely change the substance of this litigation at all.  Deere has known since at least December 2021 that Plaintiff has sought to hold Deere

responsible for design defect and marketing defect claims. *See* Doc. No. 1-16, p. 4 (third amended petition in state court). Although the pleading of those claims has been suboptimal by federal standards, Deere has long known that Plaintiff seeks to sue it on those grounds. It was only after Deere's removal of Plaintiff's suit to federal court that the enhanced federal pleading requirements arose. Plaintiff's requested amendment is untimely, but beyond the cost suffered by Deere in filing its Rule 12(b)(6) dismissal motion, Deere would not suffer meaningful prejudice from permitting Plaintiff's untimely amended complaint. The record does not suggest, and Deere does not contend, that Deere would be prevented from raising any defense, accessing any evidence, or preserving any testimony, or that Deere would be required to reorient its strategy or conduct new discovery as a result of permitting the amendment. Other than the motion to remand and the dismissal motions being discussed in this memorandum, no litigation has occurred at the federal level since removal: no summary judgment motions are pending, and it appears that nothing needs to be unwound or undone if the amendment is permitted. Additionally, the underlying factual allegations are unchanged.

Even if Deere were to suffer some level of prejudice from permitting the amended complaint, that prejudice could be cured with appropriate modifications to the scheduling order. There is no indication here that any continuance is needed at all, or even if it were, that a continuance would not cure any prejudice, and the defendants do not suggest to the contrary. *See* Doc. No. 36, pp. 8-9. Deere can also seek dismissal under Rule 12(b)(6) of any claims it believes are still insufficient. The undersigned concludes that the third and fourth factors weigh in favor of granting leave to amend.

### 4. *Holistic analysis of the Rule 16(b)(4) factors.*

The four Rule 16(b)(4) factors are not to be applied mechanically. The second, third, and fourth factors all weigh in favor of amending the scheduling order. At the same time, Plaintiff's delay in seeking leave to file her amended complaint does not reflect well: the undersigned harbors reservations regarding whether Plaintiff has acted diligently in seeking to amend the complaint, having known of the applicability of federal pleading standards for more than two months before the deadline for filing amended pleadings. *See* Doc. No. 22, p. 4 (September 15, 2022 denial of remand holds that federal pleading standards apply, more than two months prior to the December 1 amendment deadline). But, on balance, the undersigned concludes that good cause nonetheless exists to permit the amendment of the scheduling order. The undersigned therefore considers whether Plaintiff's motion for leave to amend should be granted under Rule 15(a)(2).

### G. *Leave to amend should be granted.*

Rule 15(a)(2)'s more liberal standard also impels granting Plaintiff leave to amend her complaint. Such leave should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Although courts have wide discretion in determining whether to grant leave, the rule "evinces a bias in favor of granting leave to amend." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981); *see also Martin's Herend Imports v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999). District courts may deny leave to amend for a variety of reasons, including undue delay, bad faith, dilatory motive, undue prejudice, or futility. *See United States ex rel. Gage v. Rolls-Royce N. Am., Inc.*, 760 F. App'x 314, 318 (5th Cir. 2019); *see also Trench Tech*, 2021 WL 9095768, at *4.

Here, there has been delay, but not undue or significant delay.  Defendants do not allege that Plaintiff has failed in bad faith or with dilatory motive to delay her motion for leave to amend.  The undersigned previously addressed the defendant's argument of prejudice in the context of Rule 16(b)(4)'s good cause analysis, and found that no undue prejudice exists.  And the undersigned has concluded that Plaintiff's amended complaint is not obviously futile.  Accordingly, pursuant to Rule 15(a)(2), the undersigned recommends that Plaintiff's motion for leave to amend her complaint be granted.

### H. Conclusion.

The undersigned finds that dismissal of Plaintiff's claims against Robstown is appropriate, and that Plaintiff should be permitted to amend her complaint.  The December 1 amended complaint, however, was filed without leave of court and should be stricken.  The undersigned also finds that Deere's Rule 12(b)(6) dismissal motion, which is directed at that December 1 amended complaint, is moot.

### I. Recommendations.

To recap, the undersigned recommends:

- Robstown's motion to dismiss for lack of subject matter jurisdiction (Doc. No. 29) should be GRANTED.  Plaintiff's claims against Robstown should be dismissed without prejudice.

- Plaintiff's December 1 amended complaint (Doc. No. 26) should be STRICKEN, because it was filed without leave of court.

- Plaintiff's motion for leave to amend her complaint (Doc. No. 30) should be GRANTED.

- Because Robstown should be dismissed from this case without prejudice for lack of subject matter jurisdiction, Plaintiff should be ordered to amend her complaint within 30 days to include allegations of liability only against Deere, using federal pleading standards.

- Deere's Rule 12(b)(6) dismissal motion (Doc. No. 28) should be DENIED as moot, without prejudice to a future dismissal motion upon the filing of Plaintiff's amended complaint.

### J. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **14 DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **14 DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on February 14, 2023.

MITCHEL NEUROCK
United States Magistrate Judge

33 / 33